*Court of Common Pleas, Dauphin County, February 11th,* 1856.

## MILLER *v.* LENHART.

A mechanic's lien can only be filed against the house upon which the labor was done, or the materials furnished, the ground upon which it stands, and the out-buildings necessary for its enjoyment. If it has been entered against any other property, a judgment confessed in favor of the mechanic or materialman at the time it was filed will not cure this defect. The penalty for entering a lien in this manner is to be postponed to other creditors. (Lauman's Appeal, 8 Barr, 473, distinguished.)

. BY THE COURT.—The legislative intention .in passing laws to secure a lien to mechanics and materialmen on the buildings erected, must not by construction be carried beyond the design of the enactment, and extended to other buildings on which no labor was bestowed, and for erecting which no commodities were furnished. The ground on which the building stands must from necessity be held within the grasp of the lien, else it would afford no security; and to the immediate site is added the necessary curtilage, to be determined either before or after the sale. This curtilage embraces no more land than is requisite for the enjoyment of the building, taking into consideration the object of its erection; and in no event can include other buildings on which no labor was bestowed, or materials furnished, unless they are connected with and indispensable to the enjoyment of the main construction. The farthest the courts have gone, is in permitting the mechanic, who had erected a farmhouse, to include within his lien the out-houses immediately connected with it, on the same farm, and indispensable to its enjoyment as a farmhouse (Lauman's Appeal, 8 Barr, 473). The only class of cases in which a joint lien has been tolerated, is, where the same man has furnished materials for *a block of buildings,* erected at the same time, and for the same person (3 H. 265). But in that case it is decided that a lien so filed against disconnected blocks is irregular. In Thomas *v.* James (7 W. & S. 381), where a claim for materials furnished for various *disconnected* buildings belonging to the same person was filed, it was held to be irregular, and was postponed to subsequent liens. In the case under consideration the lien is filed against a brick dwelling-house, a frame slaughter-house, meat-house, ice-house, and stable, all erected on one lot in this borough, which is particularly described by metes and bounds. The evidence shows that the erections are on two distinct lots, with an alley between them; the stable and slaughter-house being on a different lot from the house, and although used by the present occupant for the general purpose of his business, yet being fully susceptible of division, and in fact could not well be used for any common purpose, except by a butcher. The dwelling-house has not *necessarily* any connection whatever with the slaughter-house and stable. The frame dwell-

[Miller *v.* Lenhart.]

ing-house, ice-house, and meat-house erected on the same lot with
the brick dwelling, were built in the year 1853, with materials
furnished by other persons, and the slaughter-house in the same
year by another workman, all of which were completed before
any portion of these materials were furnished by McAllister &
Cox. Therefore, it is very clear that an effort was made in
this case to obtain a lien on buildings for which no portion of
the materials were furnished by the present claimants, and which
were not necessarily within the curtilage or ground occupied by
the main building, but entirely disconnected therefrom. After
the materials were furnished by McAllister & Cox, and before
any lien was filed, Messrs. Miller and Willson each obtained judg-
ments against Lenhart, which were general liens on all his prop-
erty; yet subject to be overreached in part by the materialmen,
had their claim been filed in proper form. We say in part, because
they had no right to include those buildings for which they had
furnished no materials, to the injury of the other lien creditors, the
penalty for which, under the 13th section of the act of 1836, is
having their claim postponed in favor of such creditors.

It may be said that this case does not come within the provi-
sions of that section; that the materialmen had not furnished
materials for two or more buildings owned by the same person, and
was, therefore, not required to designate for which they were fur-
nished. It is true that it is not within the *letter*, but as we con-
ceive comes within the spirit and intention of the act. The object
to be avoided was the uncertainty and confusion arising from
spreading the lien over various structures, so that no one could
ascertain the precise sum properly chargeable to each building,
leaving the lien creditor in uncertainty as to what he could hold;
a purchaser of one of the buildings in doubt as to the amount of
charge against it; and in case of a judicial sale, the courts unfur-
nished with proper data to make distribution of the money. The
same evil exists in the present case; and the injustice and impro-
priety of the lien is still more obvious. Here, after liens have
attached, the materialmen endeavor to spread their claim over
buildings on a different lot, and for the erection of which they con-
tributed nothing. The older lien creditor is left in the same uncer-
tainty as to what his security lawfully holds, and the court is
thrown into a dilemma in making distribution, all from want of
a fair compliance with the law by the materialmen.

We have been referred to cases in which there was vagueness
and uncertainty in the description of the location of the buildings,
but they have no bearing on the present case; that is not the evil
here. There is no mistaking the location of these buildings from
the description filed, but the error consists in spreading the lien
over buildings for which no materials were furnished, and which
were no part of the curtilage. In fact, it would have been unlaw-

1855.]     OF DAUPHIN COUNTY.     97

[Metzgar v. The Directors of the Poor of Dauphin County.]

ful for the sheriff to have sold both of these lots, with their neces-
saries together.   I am well satisfied that the case under considera-
tion comes clearly within the mischief intended to be guarded
against by the 13th section of the act of 1836.

It is argued that the judgment rendered by confession on the
day the lien was filed, cures this and all other defects; and for
that we are referred to Lauman's Appeal (8 Barr, 477–8).   The
curing effect of a judgment, as there decided, goes merely to infor-
malities in the amount or description of the claim.   Such errors
are cured by a judgment, which renders the lien certain on all those
points; but it tends to cure nothing here.   It cannot extend the lien
to other lots and other buildings not lawfully bound before; or
aid a court or party in determining what portion of the claim for
materials shall be applied to the one house or the other.   On the
whole we are of the opinion that the auditor came to a correct
conclusion in this case, and the claim of the materialmen must be
postponed to that of the other lien creditors.

The report of the auditor is confirmed, and it is ordered and
decreed that the money be paid out according to the report.